and welcome to the 11th Circuit. Judge Pryor and I are very pleased and honored to have joining us today on the bench, Judge Kenneth Ripple from the Seventh Circuit Court of Appeals. And we're very fortunate because Judge Ripple has helped us out from time to time on many occasions and he's always an excellent jurist. So we're very thrilled to have him with us today. All right, we will begin with the case of Whatley v. Warden. Good morning and may it please the court. Annalise Peters for Mr. Whatley. The district court committed reversible error when it dismissed Mr. Whatley's claims for a second time, finding that he failed to exhaust his administrative remedies. We'd asked that the court reverse and remand so that Mr. Whatley can go to discovery and there's a couple of different ways that the court can get there and I want to cover two of them this morning, starting with Mr. Whatley's January 18th grievance. The district court made the finding that Mr. Whatley's claim that he filed that grievance was, quote, unsubstantiated. But there is a lot of evidence in the record that the district court entirely ignored that corroborates the fact that Mr. Whatley filed that grievance. What weight do we have to give to the fact that the Department of Corrections had a policy to retain all grievances for three years? Judge Pryor, I think that the real question here, I mean, I think that's certainly something that can be considered. But the real issue here is whether the counselor who received the grievance properly put it into the system and followed the procedure. And the only thing that the defendants or the state have put into evidence to support and meet their burden of proof that Mr. Whatley failed to exhaust his remedies is two self-serving boilerplate affidavits that were signed two years after the fact by current employees of the Department of Corrections. They still work there, so it's certainly in their interest to say that they didn't sign these and that they didn't lose a grievance or letter. On the other hand, Mr. Whatley put a lot of evidence into the record, and there's seven things. There's photographs, there's a unique receipt, and then there's five written submissions that he sent to the prison and to the state court system shortly after the fact, all mentioning the fact that he had filed that January 18th grievance. And the district court ignored all of it. So on Mr. Whatley's last day— I'm not sure it really ignored it. I mean, didn't the district court talk about how there were some signatures that were allegedly in question on one of the receipts, and there were some other things? There was, I guess, a note that was—this was among the later ones—but a note that was allegedly written by someone who said, that's not my writing and I never wrote this note. I mean, didn't the court also consider those things? It considered the two affidavits that the state submitted into the record, certainly, and discussed both of those and gave credibility to those. And it did at least acknowledge that Mr. Whatley submitted the grievance receipt for that January 18th grievance and then also the letter that he wrote to the counselor, Mr. Petrie. But here's what it didn't consider. So Mr. Whatley, on his last day at Telfair State Prison, was beat up by a couple of guards and then hours later sent to Ware State Prison. Six days later and four days before the deadline for him to file an informal grievance is when he filed his grievance. That's the 18th. The day before that, on January 17th—and this is in the record—Mr. Whatley was taken to the warden's office and his bruises were extensively photographed on his front and his back. The next day is when he filed that informal grievance. The day after that, on January 19th, he was taken down to the medical examiner's unit and he was given another full medical exam. More photographs were taken. He was given urine tests. X-rays were taken. All of that happened the day after he says he filed his grievance. Let me tell you what my sort of problem is here. Usually, on this kind of a case, there would be an evidentiary hearing. But under our case law, it's not required so long as neither party asks for an evidentiary hearing and the dismissal is without prejudice. And both of those things happened here. So in order for us to reverse this, we would have to find clear error that the district court was wrong, which would mean effectively that we would be finding that your client should win. In other words, I don't think we can just sort of find, under the circumstances of this case, that there was clear error and send it back and then the court looks at it anew. It's either we find clear error with the way the district court weighed and decided the evidence and we think it comes out the other way, or we don't find clear error. Maybe I'm misunderstanding this and you want to address this. But if that is, in fact, the situation, I'm not sure that I can get to where there's clear error here. And I really need your help in pointing that out a little bit more. Sure, Judge Rosenbaum. I agree. We agree that the standard is clear error. But that standard of review has got to have some teeth. And this court has said, in Knight v. Thompson, this court articulated that standard as requiring that the record have, well, excuse me, that there is clear error if the record lacks substantial evidence supporting the finding. This court's also said that it must be, the finding of the district court must be plausible in light of the entire record. And the district court's finding that Mr. Whatley's claim was, quote, unsubstantiated is just belied by the evidence itself. In addition to the photos, there are the fact that Mr. Whatley submitted this grievance receipt, which, of course, the district court acknowledged. I'd encourage the court to also look at other informal grievance forms from Ware State Prison that are in the record. This is a unique form to Ware State Prison. This informal grievance form and receipt, it wasn't used at any other prison that Mr. Whatley was transferred to. And he put this receipt into the record in April 2013. He was only at Ware Prison for a total of about a month. That means that sometime between the time that he would have filed that January 18th grievance and the three additional weeks that he remained there, he concocted this crazy plan to steal or take with him a blank informal grievance form and then later create the story that he was going to fill it out and forge it and submit it. Additionally, at the end of 2012, the entire state stopped using an informal grievance form. He didn't even put this into the record until five months later. It requires a very sophisticated, thoughtful plan when he would have just filed a grievance when the state had already begun investigating what had happened. Additionally, when you get beyond the receipt itself, oh, and I would just also encourage the court to compare the signatures on the declaration and the grievance receipt as well as Mr. Petrie's signature on the letter and his declaration. I think the court would find that they're pretty similar and they look pretty similar. But then I also want to briefly cover those five other filings that Mr. Watley submitted to the prison or the state shortly after. So three weeks after that January grievance, on February 9th, he was transferred to a third prison in Jackson, Georgia. The next day, on February 10th, he filed his imminent danger grievance, grievance number two. And the whole point was him saying, I filed a grievance and nobody's responded. I already requested protective custody. Fast forward a month later, in March, he files another grievance. He says, on January 17th, 2011, I filed grievances, no response. Paperwork's been destroyed by cert team at Ware. Then again, in March and April, twice he submitted something to the state court because the prison wouldn't respond, saying that on January 17th, I attempted to use the grievance procedure and filed an emergency grievance. The attempt was stymied by the administration. And finally, in April, he filed directly up to the commissioner from his informal grievance because no one had responded. The district court ignored all of that evidence. There's no indication that it looked at any of it. And it instead found that it was unsubstantiated that Mr. Watley had filed the grievance. Can you just confirm for me that there is no request in the – I mean, if there's a request from either party for an evidentiary hearing, that might have an effect on how I look at the legal framework here. Can you confirm for me that there was no request for an evidentiary hearing? I don't think that Mr. Watley came out and asked for one. He was a pro se inmate prisoner on his own. And given that the state submitted just these two affidavits, I mean, there's a lot of questions. How many grievances does this particular counsel get in a day, in a week? What's her process for taking them, for signing a receipt, for inputting them into the system, for sending them on to the next person? None of that is anywhere in the record. We just have no idea. All we have is this self-serving boilerplate affidavit that misidentifies Mr. Watley's number, just proving that this is just a routine thing that they sign. And it was two years later. That's all that's in the record in support of the fact that Mr. Watley didn't sign it. And so we would submit to your first question about clear error. There's not substantial evidence in the record supporting the finding and helping the state meet its burden to show that he didn't, in fact, exhaust his remedies. And I'd also just like to point out that this Court has before reversed on a question of exhaustion for clear error. That was in DeManch v. Brown. That was a case where it was required, and we'd submit that this is the same case. But I have no doubt that we can do it if the standard is met. It's more a question of whether the standard is met. There's a second way that this Court can reverse and remand, and that's through a combination of looking at Mr. Watley's grievance No. 2 and No. 3 that he filed. No. 2 is his imminent danger grievance, and No. 3 is the 80940. We would submit, Your Honor, that he achieved exhaustion when he first submitted that second grievance, which was improperly rejected. And the state has not contested in briefing that it was improperly rejected. He was clearly complaining about the beating and about not receiving medical attention, and it was improperly rejected as requesting a transfer. He was also not notified that his grievance had been rejected, and the state has not contested that either. So what was he supposed to do? He had no idea. He'd submitted this grievance into the ether. He thought it was supposed to be getting processed. So what did he do? He filed grievance No. 3, saying, I filed grievance No. 2, and nobody's looked at it. I want to grieve the issue. I want to grieve my beating. The warden, there's no question, and the district court agreed, decided and directly addressed on paper the merits of Mr. Watley's beating claim, and then that went up to the commissioner. And the commissioner didn't necessarily address the merits of the beating in the same way that the warden did, but there's no question that the commissioner decided the grievance on the merits. It wasn't rejected for any procedural reason. There was no procedural bar, and yet that's what the district court found, and that was error. Well, so when the commission addressed it, it talked about the procedure. I guess it addressed Mr. Watley's concerns and complaints that the procedure hadn't been followed. But I'm not – can you point out to me where you think that it addressed the merits? Yes, Your Honor. So the commissioner said the very first sentence of the commissioner's response is, a member of my staff reviewed your grievance. Well, there's no question that the grievance that he – the grievance No. 3 included full details of the beating and asked that that be reviewed. There's also no question that the commissioner's office must have reviewed grievance No. 2. All of that and the warden's response in grievance No. 3, so there's no question that the warden's – excuse me, that Mr. Watley's beating claims were before the commissioner and he looked at them. The standard can't be that it's a matter of whether the commissioner includes four extra words and you weren't beaten. That just can't be the difference between exhaustion and non-exhaustion. The question is, did Mr. Watley exhaust? And here, he pursued his remedies. He pushed the issue to the very top. In Woodford, the Supreme Court said that the purpose of the exhaustion requirement is to give the prison notice and opportunity to correct his error. Mr. Watley absolutely did that. Clearly, the prison was on notice because it was investigating what had already happened. And we would submit that requiring Mr. Watley – or excuse me, enforcing a procedural bar based on the commissioner's failure to include just a couple extra words would just insulate from review a merits-based decision that the prison actually made. Thank you very much, counsel. Good morning, and may it please the court. I'm Roger Chalmers with the Georgia Law Department. I represent Warden Hart and Officers Smith and Griffin. When the district court makes specific fact findings under Step 2 of Turner, this court has said it will not disturb those findings absent clear error. In Watley 1, this court remanded the case for two reasons. First, for applications of Turner's two-step process and for specific fact finding on this question, did Mr. Watley submit the January 18 informal grievance as he contends? And second, with respect to grievance 80940, for consideration and fact finding on this question, did the prison reject grievance 80940 on procedural grounds? Or instead, did the prison on that grievance waive any procedural bars and consider the merits of Mr. Watley's claims? Specific fact finding has occurred, as the court has seen in the record. And so with this in mind, I'd like to take these two in turn and show why the court should not reverse on clear error review. Council has fairly emphasized the serious nature of the allegations in this case, but they are allegations. There's been no default. There's been no answer. What the court has before it is a Rule 12 motion, which under Bryant and Turner is the proper way to put the exhaustion issue before the court. That motion was filed within a few months of the filing of this action in December 2012. The Supreme Court has said over the years that judicially crafted exceptions to the PLRA exhaustion requirement will not do. They have consistently rejected exceptions to the requirement. And this is important. This is an important starting point for the analysis of this case because what's suggested here is that by grievance 80940, this court should overlook what happened at the appeal, the third step in the grievance process. And that cannot happen. Boothby, Turner, in 2001, the Supreme Court said it does not matter if the remedy desired by the plaintiff is not available in the administrative process. In getting to that result, the court said the PLRA says one must exhaust. And that means use all the available processes. One exhaust processes, and the law says you must. Woodford v. Go, in 2006, the court said you cannot avoid exhaustion by failing to exhaust, by doing the wrong thing, by incompletely exhausting. And that's exactly what we have here. What is required is proper exhaustion, and that means using all steps that the agency holds out. And then again in Ross v. Blake in 2016, the court said a prisoner's reasonable belief that he's done what he needs to do is not sufficient. You have to actually exhaust, and there is no special circumstance such as the complexity or the seriousness of the case or any other special circumstance that will excuse an absolute failure to exhaust. Against all of this, we have Bryant v. Turner. And this court has adhered to that process since 2008 when those cases came down. And Bryant explained that in allowing district courts to make fact findings on exhaustion, and for this to occur at the MTD, the motion to dismiss stage, makes sense because the purpose of the PLRA is to reduce the quantity and improve the quality of prisoner litigation. So what is the point of that? The point of that is to actually encourage administrative resolution of grievances. The argument that's being made here as to grievance 80940, that the court should ignore what happened at the third step and that somehow Watley 1 suggests that it should, runs counter to all of those cases. It runs counter to the idea that the purpose of exhaustion is to encourage resolution of grievances at the prison because what would happen is that the prisons would reject grievances at that second step and not pursue any further resolution of the matter if this argument were accepted by the court. Clear air review, let me be clear on one point before I get into the two grievances. Clear air review does not say that substantial evidence must support the district court's fact finding. Under clear air review, reversal is not permitted unless from the entire record the court is left with a definite and firm conviction that a mistake has been made. And where the district court's finding including the inferences therein are plausible and not unreasonable. That's the standard. They cannot be overturned even if cause to disagree exists. Credibility choices which were made here are resolved on clear air review in favor of the fact finder. And the fact finder's choice between two permissible views of the evidence cannot be overturned. And this has been applied in the PLRA exhaustion context. In the Trias case, it's an unreported decision but it's cited in our briefs from 2014. This court had recognized that credibility determinations can be made from documentary evidence and that's what we have here. Judge Rosenbaum, to your question, there was no request for an evidentiary hearing in this case at any time. So with that backdrop in mind, I realize it took a little bit to get there but let me try to address the purported January 18 grievance and also the grievance 80940. The magistrate judge and the district court issued thorough fact findings on these two possible bases for exhaustion. The magistrate judge report and recommendation is at the record at docket 85 and the findings are at pages 12 to 14. He said that Mr. Watley's corroborating documentation are not in the record, the extensive record of the grievance filing history. The court said further that there were declarations, the Johnson and the Petrie declarations, and those declarations discredit the contention and specifically the receipt that was submitted to suggest that that grievance was submitted. Counsel has suggested that the court should compare the signatures respectfully. I don't believe that that's what clear error contemplates. There was a factual finding on those declarations and those declarations were not speculation and they were not boilerplate. They went to a central and simple issue in the case. Is that writing yours or is it not? And each of the declarations shows that the declarant said, no, that is not mine. Based on those declarations, the fact finding was made and it is plausible and not unreasonable that these were not authentic. The magistrate judge went on. He said Mr. Watley's grievance filing history belies any contention that prison officials hid his grievances, thwarted his attempts to file grievances, or otherwise made the grievance process unavailable to him. And he went on. He filed 69 grievances at Georgia Diagnostic and Classification Prison. He filed three. That's a much smaller number, but it's as important because he filed three at Ware State Prison. This is the prison where he was transferred immediately after the alleged beating. Two of those he took to the appeal step all the way through, and documentation for all of that is in the record. Prison officials, the magistrate judge said, did not hide or destroy these grievances. They kept records reflecting the initial filing and the various levels of appeals. And so the finding from all that, the magistrate judge concluded, and Judge Wood adopted that finding, that the evidence weighs in favor of defendant's contention that Mr. Watley never filed, the January 18 informal grievance. And more specifically, defendant's account of the disputed facts is more credible than plaintiff's account. So what we have there are findings that are plausible and not unreasonable. We have a choice between two permissible views of the evidence, and that is not clear error. And we have a credibility choice, and when there is a credibility choice on clear error review, this court has said that it will look to the fact finder and accept the fact finder's choice. Well, let's talk about grievance 80940 for a minute. Yes. I understand your argument to be that the warden never treated that grievance as raising a substantive claim about the beating. But didn't the district court make a factual finding that the warden's decision, in fact, did address the merits of that claim? Judge Pryor, the district court did make that finding, and we don't contest that on this appeal, and my brief was not clear on that point. But in reproducing the arguments that were made below, we set out the arguments that we had made, which is fairly construed that grievance concern process from start to finish, from informal to formal and then on the appeal. I recognize the magistrate judge has made a factual determination that, in fact, at the middle step of the process, the grievance was addressed in part on the substance of the merits of the claims that would be brought in this case. We don't believe, and I don't contest that finding. That's there. It could not be overturned except for clear error. There are two ways to look at that. So I don't disagree with that at this point in the case. However, grievance 80940 cannot constitute exhaustion in this case, and I'd like to address three points if I could. First, counsel has suggested both in briefs and in the argument that the court should look at this as a combination of grievances 80327 and 80940. And first, I'd like to say 80327 is not a path to exhaustion in this case. Watley 1 remanded to the district court for fact-finding on whether exhaustion occurred through the January 18 grievance or through grievance 80940. Mr. Watley's brief does argue exhaustion occurred or, excuse me, does not seem to argue exhaustion occurred strictly through grievance 80327. That's the imminent danger grievance. It appears to suggest that the history of that grievance indicates Mr. Watley was in a catch 22, but he was not. He never was. He was never in uncharted waters, as they say. He knew that the SOP plainly states that transfers between institutions are not grievable. The state has never conceded that grievance 80327 was rejected improperly. That was properly rejected as a transfer grievance, and the policy plainly states that that would be the case. Mr. Watley also knew, because the SOP plainly gives room for him to do so, that he could grieve a use of force or a denial of medical care, and he never did that, and that's the critical shortcoming here. The second point is you can't show exhaustion through multiple grievances. This court has never said that exhaustion can be shown by piecing together components of grievances that themselves do not constitute full exhaustion, and that is logical. The law requires complete exhaustion, meaning that you must complete each step in the process in the way that's set forth in the policy and give the prison a reasonable opportunity to address what you're complaining about. You can't do that by piecing together pieces of different grievances. And finally, conceptually, the cases don't support Mr. Watley's argument, and here I'm referring to, for example, the Eighth Circuit and the Sixth Circuit and the Seventh Circuit cases that were cited and quoted in Watley 1. The cases reason that when a grievance is accepted and processed to conclusion on its merits and the merits are the same as the later filed lawsuit, then exhaustion has occurred. So let's think about what Grievance 80940 was. It was filed March 22, 2011, which was two months after the use of force. It was filed at Georgia Diagnostic and Classification Prison, which was two facility transfers down the line from when the alleged incidents occurred. It listed March 7, 2011 as the date of the incident, and the subject matter was process. Mr. Watley's contention that his grievances were not being processed by Ms. Victoria Malone at Georgia Diagnostic and Classification Prison, not use of force at Telfair State Prison. The documentation shows that at every step along the way, at the informal, at the formal, and at the appeal step, the grievance was accepted and processed as a grievance regarding process. Well, I thought you just told me that you're not contesting the district court's finding. That is fair, and that's correct, Judge Pryor. We don't contest that at the middle step there was an additional comment on the merits of this case. But at every step of the way, it is true that the grievance was accepted and processed by the prison as a process grievance because that process issue was addressed by each decision maker. But I don't see what difference that makes if it was considered on the merits by the warden. Isn't your argument that it wasn't considered on the merits by the commissioner? Yes, it is. Why don't you talk about that for a minute? The most important thing, and here the fact finding below cannot be overturned, is that the commissioner at the third step in the process addressed this as a grievance regarding process, not a grievance about a beating or a use of force or a denial of medical care. The prison rejected grievance 80940 on those procedural grounds, the process that was raised in the grievance, not the merits of this case. So it comes down to this simple question. Did the prison in resolving grievance 80940 somehow accept the earlier grievance, 80327, as the grievance that it was resolving and specifically as a grievance regarding a beating and a lack of medical care and address those claims on the merits? And the answer is a clear no, it did not. Asking this court to construe the grievance in a way that the prison did not runs counter to the point of exhaustion, which is to allow the prison the first opportunity to address the matter. I see that my time is about up. Counsel's presentation has been convincing, but it does not carry the day in clear air review. Careful, I would ask that the court be careful with the suggestion and not accept the suggestion that it should ignore what occurred at the third and final appeal step of grievance 80940. Thank you. That is important. Thank you. Mr. Peters, before you get into your points, I wonder if you could help me on one point. You seem to raise in your brief the question of whether the fact that your client could not appeal grievance 80327, the so-called imminent danger grievance, was a denial of due process. You don't raise it as an independent argument with a bold heading, but you do somewhat obliquely raise it. My question to you is, did you raise it? And if so, where? In Whatley one. Your Honor, we we think that the issue has been preserved fully for this appeal. So, Mr. Whatley raised the fact that grievance 80327 was improperly ejected in his objections to the first report and recommendation before Whatley one, and he raised it again in his objections to the report and recommendation on remand. I think I can quote him. He said something like, how much more specific do you have to get than severely beaten and transferred without treatment? He also said when a grievance is rejected as opposed to denied, the process stops, period. You cannot appeal. My question is, did you raise it in this court in Whatley one? I don't think that it was raised outright. But in that case, why is it not waived? Well, Your Honor, the law of the case, which I know counsel has raised in their briefing, it's not binding on this court. And even Whatley one was a specific ended up in a specific remand on specific questions to the district court. And so this issue is either alive or dead depending on what you did in the Whatley one. Well, I don't think that this court decided the issue. I don't think that this court made a finding that 80327 was properly rejected. No, I believe they weren't going to send it back for any particular issue, for any particular hearing. There was no reason to. Yes, Your Honor. Well, we would submit that this court's law holds that if it would be a manifest injustice not to revisit the issue, then this court should do so. And that's what we would submit as the case here, for sure. Thank you. I've taken up too much of your time. I know from the old days when I had to give rebuttals that I don't want to have too many questions asked. I'll go right ahead. That's OK. Thank you for your questions. Judge Rosenbaum, I just want to briefly revisit your question about Mr. Whatley's potential request for a hearing. And so I do want to just point out, of course, as I mentioned, he was pro se. And I think there's a couple of different things in the papers that could be construed certainly as a request for a hearing. So in Docket 16, which is Mr. Whatley's response to the court's request for evidence, he did ask the court for, quote, appropriate action deemed necessary by this court. And we think this is an instance where the court should have, on its own, based on Mr. Whatley's request for appropriate action, invited a hearing, given that all that the state submitted were those two papers. Additionally, in Docket 79 on page 24, which was his reply to the state's supplemental brief, it's a little odd, but he sort of says that everyone should, quote, be hailed into court. And so we think that also should be construed as a request for a hearing. I also just want to cover a couple of things that counsel stated. He noted that, you know, right now we're only dealing with Mr. Whatley's, quote, allegations about what happened. And I fail to mention that we did request from the state and that via Agora request all the photos and documentation, and that request was denied as confidential state secrets. Counsel also talked about Mr. Whatley's grievance history after he filed his January 16th grievance. And I only want to point out that Mr. Whatley was incarcerated for 16 years before he filed the January 18th grievance. And in those 16 years, he only filed 12 grievances. Most recently, before January 18th, was three years earlier at a different institution related to being banned from a flag football game. So it wasn't until Mr. Whatley was beaten up and filed a grievance on January 18th that was ignored. He then started filing a lot of grievances after that because he thought that the system wasn't working for him. A couple of – oh, I see that my time has expired. You can take one more minute. Okay, thank you. Briefly, on 80940, I would just want to point out that that is a de novo standard of review. It's not clear error, and Mr. Whatley is definitely in what would be considered a Catch-22. In Minor v. Brown, which was a Southern District case, the state argued – successfully argued – that an inmate's claim was barred for failure to grieve a retaliatory transfer. Transfers are absolutely grievable, and that's clear under the SOP. And then finally, there's really just two different constructs that the district court could have followed. Either it enforces a valid procedural bar with respect to Mr. Whatley's beating claim, or – and I'm sorry, this is the prison – the commissioner either enforces a valid procedural bar with respect to Mr. Whatley's beating claim, or it decides it on the merits. And there's no question here, and I think counsel agreed, that there was no procedural bar imposed by the commissioner in Grievance No. 3. The only thing that he did was decide the issue that was before him on the merits, and it would insulate from review the prison's determination that Mr. Whatley hadn't been beating to do anything else. Thank you, counsel. Thank you. I note that you were appointed, and on behalf of the court, we'd like to thank you both very much, Ms. Peters, Mr. Tuck, for your excellent representation in this case. Thank you for accepting the appointment. Thank you.